IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 13, 2010

## JAMIE BAILEY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Dyer County**
**No. C02-73      Lee Moore, Judge**

**No. W2008-00983-CCA-R3-PC  -  Filed April 29, 2010**

The petitioner, Jamie Bailey, appeals the denial of his petition for post-conviction relief from his three first degree murder convictions, arguing that he was denied the effective assistance of counsel and that his guilty pleas were therefore unknowing and involuntary. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Magan N. White, Jackson, Tennessee (on appeal); and Martin Howie, Dyersburg, Tennessee (at hearing), for the appellant, Jamie Bailey.

Robert E. Cooper, Jr., Attorney General and Reporter; Mark E. Davidson, Senior Counsel; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

In April 2002, the petitioner was indicted by the Dyer County Grand Jury for three counts of first degree premeditated murder based on his actions of October 9, 2001, in which he shot and killed his estranged girlfriend and the two men with whom he believed she had had affairs, and then shot himself in the head when confronted by police. Following the trial court's ruling that he was competent to stand trial, on April 15, 2004, the petitioner entered best interest guilty pleas to all three counts of the indictment in exchange for three concurrent life sentences. The prosecutor recited the following factual basis for the pleas at the guilty plea hearing:

The State contends, Your Honor, that if the matter had proceeded to trial that the proof would be that on October 9, 2001 at approximately 4:31 in the morning law enforcement officers were called to the residence of Ms. Eva King who was the mother of Mr. Gary Bizzle where Mr. Bizzle also resided; that Mr. Bizzle had been shot. Mr. Bizzle was a paraplegic, Your Honor, and was . . . in a bed at that time. That when the first responders arrived at the scene Mr. Bizzle had not expired; was mortally wounded, however, Your Honor. That Mr. Bizzle did tell the first responders and also the deputies that arrived at the scene prior to his death that he had been shot by the [petitioner]. Also, . . . the proof would be that Mr. Bizzle's sister, Margaret Presslar, had spoken . . . to [the petitioner] some four days earlier . . . and that [the petitioner] at that point had made the statement that he would kill Melissa Clark who . . . had cohabited with [him] if she did not come back to him.

Approximately 8:33 that morning, approximately four hours later, Your Honor, law enforcement officers did go to the home of Arlyn Cryts after Mr. Cryts had been discovered in his home by his son, shot and killed in his home, Your Honor. The proof would also be that Melissa Clark had been at the home of Danny Cryts, Arlyn Cryts' son which is on the same property, the night before these murders took place.

And then at approximately 9:35 a.m. that morning, Your Honor, the officers went to the home of Melissa Clark concerned about her safety since they'd found the two other murder victims. Upon entering her home did find Ms. Clark's body on the couch in her home where she had been shot and killed also, Your Honor.

At approximately 2:30 p.m. that afternoon [s]heriff's deputies received a call that a gentleman was attempting to paint a car. The officers responded to the scene; discovered the individual to be [the petitioner]. Upon attempting to take [the petitioner] into custody [the petitioner] did take a weapon which he had with him, a pistol, and did shoot himself in the head, Your Honor. [The petitioner] was transported to the hospital [and] then did recover from his wounds.

The weapon that was recovered from [the petitioner] that he had used . . . in shooting himself. . . . The ballistics reports do show that that weapon fired the shots that killed all three individuals in addition to being the weapon with which [the petitioner] shot himself.

-2-

As part of his guilty pleas, the petitioner attempted to reserve as a certified question of law whether the trial court was correct in its competency determination. This court, however, dismissed the appeal on the basis that the attempted certified question of law was not dispositive of the case, and our supreme court denied the petitioner's application for permission to appeal. See State v. Bailey, 213 S.W.3d 907, 912 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 2006).

The petitioner filed a *pro se* petition for post-conviction relief on May 17, 2007, followed by an amended petition on February 20, 2008, after the appointment of post-conviction counsel. In the *pro se* and amended petitions, the petitioner raised the claim of ineffective assistance of trial counsel. Specifically, he alleged that counsel provided ineffective assistance by not attending the petitioner's interview with Tennessee Bureau of Investigation ("TBI") officers and not requesting an audiotape of the interview, not requesting a preliminary hearing, and not moving for a change in venue. At the post-conviction evidentiary hearing, the petitioner added as an additional claim that he would not have pled guilty had trial counsel not assured him that he would succeed with his certified question of law.

At the evidentiary hearing, the petitioner testified that his interview with the TBI officers occurred at the Dyer County Jail within a few months of his arrest and after counsel had already been appointed to represent him. Trial counsel, however, was not present for the interview and, as far as he knew, never requested a copy of the audiotape of the interview or a transcript of the tape. The petitioner said he thought he should have had a preliminary hearing, but counsel never requested one. In addition, he never saw any discovery in the case, which resulted in his not learning of the State's evidence until approximately thirty months after his arrest when counsel came to talk to him about his guilty pleas. The petitioner stated that he asked counsel to file a motion for change of venue, but he did not know whether counsel ever did so.

The petitioner further testified that counsel told him that he was going to file five petitions in his behalf, including a motion to dismiss, but when the petitioner was taken to court, trial counsel was not present. The petitioner said that the trial court reset the case after informing him that counsel was in juvenile court on another matter. The petitioner stated that because trial counsel's failure to appear made him angry, he wrote counsel a letter telling him to prepare the paperwork for his guilty pleas and to "send [him] on to prison." Two days later, which was on a Monday, counsel and his colleague came to see him and at that time informed him of the State's evidence in the case. He then entered his pleas the following Thursday and the next day was sent to prison.

The petitioner agreed that the main issue in his case involved his competency. He said that he was evaluated by the Middle Tennessee Mental Health Institute, which found him

incompetent to stand trial due to retrograde amnesia. However, at the hearing that followed, the trial court found him to be competent. He stated that trial counsel, when discussing the certified question of law, "more or less told [him] that he believe[d] the appellate court would go in [his] favor." He said that had it not been for counsel's assurance that the issue would be resolved in his favor, he would not have pled guilty.

On cross-examination, the petitioner testified that he recalled counsel's having filed a motion to dismiss almost immediately after the indictment was returned. He also recalled that he was present at that hearing, but he could not recall that the evidence against him was discussed at that time. He said that counsel asked him why he had not informed counsel about his interview with the TBI, and he responded that he had not known that they were coming. Although he expressed his belief that counsel's failure to be present hurt his case, he acknowledged that he had, in the interview, disavowed any knowledge of the crimes.

The petitioner further acknowledged that at the time he entered his pleas he understood the charges against him, the State's evidence in the case, the possible penalties for the crimes, and the sentences he would receive for pleading guilty. He also conceded that he had assured the trial court that he understood what he was doing in pleading guilty, was satisfied with counsel's representation, and realized that he could be unsuccessful with his certified question of law. He explained, however, that trial counsel had told him that "more than likely" the certified question of law would be decided in his favor.

Trial counsel, who was appointed to represent the petitioner while the case was still in general sessions court, testified that he had been practicing law in Tennessee for fifteen years and employed by the Public Defender's Office for the Twenty-Ninth Judicial District for approximately thirteen years, during which time he had been involved in numerous jury trials, including homicide cases. He said that one of the first things he did was to request a mental evaluation of the petitioner. The petitioner was transferred to the Middle Tennessee Mental Health Institute prior to the return of the indictment, and the letter he received from the Institute stated that an insanity defense could not be supported but that the petitioner was incompetent to stand trial due to his amnesia. Based on those results, and the fact that the district attorney's office had an open file policy on discovery, he decided not to request a preliminary hearing in general sessions court but to instead concentrate his efforts on the competency hearing in the trial court.

Trial counsel testified that when he learned of the petitioner's interview with the TBI, he informed the prosecutor that he did not think it would be appropriate for the State to use any statement the petitioner made after the appointment of counsel. Overall, he believed that the State had "pretty good proof" in the case, including the dying declaration by one of the victims, an eyewitness who saw the petitioner leaving the scene of one of the crimes, and the ballistics evidence showing that the fatal shots came from the petitioner's gun. He, therefore,

was of the opinion that the petitioner would lose at trial.

Trial counsel testified that he did not discuss the case with the petitioner in great detail because, in light of the diagnosis of amnesia, he did not want to risk giving the petitioner any false memories. He said he filed an unsuccessful motion to dismiss the case based on the petitioner's incompetency and also sought an interlocutory appeal of the trial court's competency ruling, but it was denied. In addition, he had a number of motions prepared, including one for change in venue, which he indicated he would have filed had the case gone to trial.

Trial counsel testified that he felt fairly confident of his position on the competency issue and indicated as much to the petitioner, but that the petitioner's physicians did a "one eighty" at the hearing, testifying that the petitioner was now competent to stand trial. He said he told the petitioner that he thought the appellate court would consider the issue, but he never told him that he was going to win on appeal. He also said that although no death notices were filed in the case, it was still a possibility at the time the petitioner entered his pleas. On cross-examination, trial counsel acknowledged that had the competency issue been raised on direct appeal following conviction at trial, the appellate court would have likely reached the merits of the issue.

On April 8, 2008, the post-conviction court entered a written order denying the petition, finding that the petitioner had failed to meet his burden of showing that he was denied the effective assistance of counsel.

## ANALYSIS

### I. Post-Conviction Standard of Review

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the

post-conviction court's findings of fact.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

## II.  Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding.  Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee).  The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing  Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)).  The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial.  Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

## III.  Allegations of Ineffective Assistance

On appeal, the petitioner contends that trial counsel was ineffective for not attending his interview with the TBI or seeking a recording or transcript of the interview, not requesting a preliminary hearing, not moving for a change in venue, and improperly advising him he would be successful on appeal with respect to the competency issue he attempted to preserve in the certified question of law.

### A. Failure to Attend Interview

The petitioner first argues that trial counsel was deficient for failing to attend his interview with the TBI or to obtain a recording or transcript of that interview and that "such deficiency resulted in prejudice." Both trial counsel and the petitioner, however, testified that counsel was not informed of the interview until after it had already taken place. Trial counsel also explained that he informed the prosecutor, after learning that the interview had occurred, that he did not think it would be appropriate for the State to introduce any statement obtained from the petitioner after the appointment of counsel. Implicit in counsel's testimony is that he would have taken steps to suppress the statement had the need arisen. Notably, the petitioner did not testify that he would not have pled guilty had counsel been present or obtained a recording of the interview, and he admitted that his "statement" had consisted of nothing more than his disavowal of any knowledge of the crimes. Thus, the record supports the post-conviction court's finding that the petitioner failed to show either deficiency or resulting prejudice with respect to counsel's failure to attend or obtain a copy of the interview. We conclude, therefore, that the petitioner is not entitled to relief on the basis of this claim.

### B. Failure to Request a Preliminary Hearing

The petitioner next argues that trial counsel was deficient for not requesting a preliminary hearing in general sessions court, which resulted in the petitioner's "enter[ing] a plea without knowing the evidence against him." The petitioner, however, acknowledged in his testimony that he was aware of the evidence against him at the time he entered his guilty pleas. Moreover, trial counsel offered a reasonable explanation for his decision not to pursue a preliminary hearing, testifying that because the State had an open file discovery policy and the results of the petitioner's mental evaluation indicated that he was incompetent to stand trial due to his amnesia surrounding the events, he chose to concentrate on the competency hearing in criminal court. The petitioner has not shown that counsel was deficient for not requesting the preliminary hearing, or that he was prejudiced as a result. We conclude, therefore, that the petitioner is not entitled to relief on the basis of this claim.

### C. Failure to File Motion for Change in Venue

The petitioner next argues that trial counsel was deficient for failing to file a motion for change in venue and that such deficiency prejudiced his case because "[a]s he maintains in the record, he would not have entered the plea if he had known that the trial would have been held in another county."

We note that the petitioner never testified that he would not have pled guilty had he known that the trial would be held in another county, but instead only that he requested that

-7-

trial counsel file a motion for change in venue and was not sure if counsel ever did so. Moreover, as the State points out, no proof was presented at the evidentiary hearing that there was any need for a change in venue or that the motion would have been granted if filed. Furthermore, trial counsel testified that he had started a motion for change in venue and indicated that he would have filed it along with other motions had the petitioner not decided to plead guilty. Thus, the petitioner has not met his burden of establishing either a deficiency in counsel's representation or prejudice to his case. We conclude, therefore, that the petitioner is not entitled to relief on the basis of this claim.

### D. Failure to Properly Advise Petitioner on Certified Question of Law

Lastly, the petitioner argues that trial counsel was deficient for assuring him that the appellate court would address the competency issue and for advising him that he felt fairly confident that the court would rule in his favor. The petitioner asserts that were it not for these statements, he would not have pled guilty.

The petitioner has not, however, met his burden of showing that counsel was deficient in his advice or that counsel's alleged deficiency in this respect caused him to plead guilty. At the evidentiary hearing, trial counsel explained that he had researched the issue and believed he had strong case law in support of his position, which made him feel fairly confident with respect to the competency issue. However, although he told the petitioner he thought he could have the issue heard by the appellate court, he never assured him that he would be successful in his appeal. Trial counsel's testimony on this latter point was corroborated by the petitioner, who testified that counsel "more or less told [him] that he believe[d] the appellate court would go in [his] favor," and that the issue would "more than likely" go his way. The petitioner also acknowledged that the trial court informed him at the guilty plea hearing that he might not be successful with his certified question of law and that he would be unable to withdraw his guilty pleas if that were the case.

We conclude, therefore, that the petitioner is not entitled to relief on the basis of this claim.

### IV. Voluntary and Knowing Guilty Pleas

In an interrelated argument, the petitioner argues that counsel's deficiencies resulted in involuntary and unknowing guilty pleas because at the time of their entry, he believed that the competency issue would be addressed by this court as a certified question of law and was unaware of what evidence the State intended to present at trial, the effect that his statement would have on his case, and where his trial would be conducted.

When analyzing a guilty plea, we look to the federal standard announced in Boykin

v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The transcript of the guilty plea hearing reveals that the trial court appropriately informed the petitioner of his constitutional rights and of the specific rights he was waiving by pleading guilty. The petitioner assured the trial court that his counsel had thoroughly discussed the plea agreement with him, that he fully understood its terms and the constitutional rights he was waiving by entering his plea, and that he was not under the influence of alcohol or any drugs other than his prescribed medication. Upon further questioning by the trial court, he stated that his medication did not affect his ability to understand the proceedings. He also assured the court that counsel had answered all his questions, that he was completely satisfied with counsel's representation, and that he understood that the appellate courts might reject his certified question of law or rule against him on the issue and, if that happened, he would be unable to withdraw his guilty pleas.

We conclude, therefore, that the record shows that the petitioner's guilty pleas were knowingly, intelligently, and voluntarily entered.

## CONCLUSION

Based on our review, we conclude that the petitioner has not met his burden of showing that trial counsel was ineffective in his representation or that the petitioner's guilty

pleas were unknowing and involuntary.  Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE